NOT FOR PUBLICATION                                                               (Docket Entry No. 16, 17)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
EVANSTON INSURANCE COMPANY,         :
                                    :
            Plaintiff,              :            Civil No. 04-4741 (RBK)
                                    :
      v.                            :            **OPINION**
                                    :
TIMOTHY H. BULKLEY, M.D., et. al,   :
                                    :
            Defendants.             :
_____ :

**KUGLER**, United States District Judge:

Currently before the Court in this action for a declaratory judgment is Plaintiff Evanston Insurance Company's ("Evanston") motion for summary judgment and the cross-motion for summary judgment filed by Defendant Timothy H. Bulkley. For the reasons to follow, the Court will grant Plaintiff's motion for summary judgment and deny Defendant's motion for summary judgment.

**I.      FACTS**

Evanston seeks a declaration that it bears no duty to defend or indemnify its policyholder, defendant Timothy H. Bulkley, M.D., in a New Jersey state court action filed by one of Dr. Bulkley's former patients, Ronald Lee Chisolm. In a complaint dated May 4, 2004, Mr. Chisolm alleged that Dr. Bulkley, along with his employer, Gastroenterology Group of South Jersey, P.C.

("GGSJ"), and two other physicians– Dr. Gary A. Matusow, who is a colleague of Bulkley's at GGSJ, and Dr. Daniel E. Shufler, who was apparently unaffiliated with GGSJ-- violated the Americans with Disabilities Act, the New Jersey Law Against Discrimination, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, during their course of treatment of Mr. Chisolm.  The complaint additionally alleged that the defendants intentionally caused Mr. Chisolm to suffer emotional distress.

Evanston issued a professional liability policy ("the policy") to Dr. Bulkley for the period dating from March 18, 2004 to March 18, 2005.  The policy supplied $3 million in aggregate coverage for "individual professional liability" that should arise "because of malpractice or personal injury," where "sustained by a patient and committed by the individual insured, or by any person for whose acts or omissions the Insured is legally responsible." Defendant's Ex. A at 1, 6.  Evanston is obligated under the policy to pay Dr. Bulkley "all sums" which he "shall become legally obligated to pay as damages as a result of claims first made against the insured during the policy period." Id. at 6.  Coverage was subject to a deductible of $5,000 per claim. Id. at 1.  The policy defined "malpractice" as an "act, error or omission in professional services rendered or that should have been rendered[,] including services by an individual Insured as a member of a formal accreditation or similar professional board or committee of a hospital at which he is staff member." Id. at 7.  "Personal injury" was defined under the policy to include "any physical or mental injury to or death of any patient" and "false arrest, detention, or imprisonment, and malicious prosecution or humiliation except when inflicted by, at the direction of, or with the consent or acquiescence of the Insured who has predetermined to commit such act, or allowed such act to have been committed, without legal justification." Id.

2

The scope of coverage under the policy was subject to several exclusions. Specifically, the policy did not apply "to any act committed in violation of any law or ordinance; to any claim based upon or arising out of any dishonest, fraudulent, criminal, malicious, knowing, wrongful, deliberate, or intentional acts, errors or omissions committed by or at the direction of the Insured[.]" Defendant's Ex. A at 8. The policy also excluded "any claim based upon or arising out of discrimination by the Insured on the basis of race, creed, age, sex, sexual preference, physical handicap or national origin[.]" Id. The policy contained a punitive damages exclusion stating that the insurer does not bear any liability for punitive damages that should result from any suit against the policyholder. Id.

The underlying lawsuit, filed May 4, 2004, alleges that Dr. Matusow, Dr. Bulkley, GGSJ and Dr. Shufler failed to provide Mr. Chisolm, who is hearing-impaired, with a sign language interpreter who could facilitate Mr. Chisolm's communications with Dr. Matusow, Dr. Bulkley, and Dr. Shufler.[1] The suit additionally alleges that Drs. Matusow and Bulkley terminated the doctor-patient relationship with Mr. Chisolm in July 2003. Mr. Chisolm's complaint contains a total of thirteen numbered "factual allegations" and four counts. The relevant factual allegations included:

> 5. "...a failure to provide appropriate and reasonable auxiliary aids to plaintiff..."
>
> 6. "...a failure to provide an interpreter for the care of the plaintiff...These aids were denied on numerous occasions by the defendants for plaintiff...until they [Dr. Matusow and Dr. Bulkley] terminated plaintiff as a patient on July 17, 2003, specifically due to his disability and his repeated requests for accommodation."

---

[1] Mr. Chisolm sought treatment from Dr. Matusow, Dr. Bulkley, and Dr. Shufler for Hepatitis C.

>    7. "Plaintiff was a patient at the defendants, Dr. Matusow and Dr. Bulkley's medical ofice from November of 2002 through July 17, 2003. Defendants were treating plaintiff for Hepatitis C until they terminated him as a patient in the middle of his treatment for his medical condition. Plaintiff was then left unmonitored by the Defendants while he waited to obtain a new doctor to continue with his medical treatment."
>
>    8. "Plaintiff was told unequivocally by the defendants that the doctors' office 'did not need an interpreter' and they then requested that plaintiff find another doctor. Frustrated after explaining his position and the law to no avail, plaintiff was forced to seek treatment elsewhere."
>
>    9. "When plaintiff was terminated as a patient by Dr. Matusow and Dr. Bulkley's office, he was referred to a Dr. Shuffler who he had an appointment with for September 12, 2003..."
>
>    11. "Plaintiff was ignored, humiliated and treated like a non person by defendants. Defendants' actions resulted in plaintiff being irretrievably denied medical treatment by the defendants, Dr. Matusow, Dr. Bulkley and the Gastroenterology Group of South Jersey, P.C., directly due to his disability and his request for accommodation for the same."
>
>    12. "Each and all of the above acts, both of omission and commision, were intentional acts of discrimination and each and all were a proximate cause of the damages suffered by plaintiff."
>
>    13. Defendants' willful, knowing and repeated acts of intentional discrimination against plaintiff evidences a pattern and practice of discrimination that is in violation of N.J.S.A. 10:5-1, et seq., the ADA and the Rehabilitation Act and caused plaintiffs (sic) to suffer and continue to suffer mental and physical pain and anguish."

Defendant's Ex. C at 4-6.

Among the four counts of the complaint, the first three allege violations of the ADA, the Rehabilitation Act of 1973, and the New Jersey Law Against Discrimination. Defendant's Ex. C at 6-8. The fourth count, entitled, "Intentional Infliction of Emotional Distress," alleges that

4

"Plaintiffs (sic) were caused to suffer great emotional stress." Id. at 8.

Dr. Bulkley tendered defense of the Chisolm action to Evanston on August 6, 2004, and Evanston denied defense and indemnification on September 8, 2004.  Evanston seeks a declaratory judgment from this Court that it bears no duty to defend or indemnify the policyholder against the Chisolm suit.  Both parties moved for summary judgment on Feburary 18, 2005.

## II.     ANALYSIS

### A.     CHOICE OF LAW

The plaintiff, Evanston Insurance Company, is an Illinois corporation and citizen of Illinois, with its principal place of business in Illinois.  Evanston is licensed to sell insurance in the state of New Jersey.  Defendant Dr. Bulkley does not contest Evanston's assertion that he is a citizen of New Jersey.  New Jersey is the place of contract where Dr. Bulklely purchased his professional liability policy from Evanston, and Dr. Bulkley is licensed in and practices in New Jersey.  Mr. Ronald Lee Chisolm was treated in New Jersey, and he filed his complaint against Dr. Bulkley in New Jersey state court.

New Jersey law governs this Court's choice-of-law determination of whether to apply New Jersey or Illinois law in interpreting the policy issued to Dr. Bulkley. Woessner v. Air Liquide Inc., 242 F.3d 469, 472 (3d Cir. 2001).  Under New Jersey law, the law of "the state that has the most significant connections with the parties and the transaction" governs the interpretation of a liability policy. Gilbert Spruance Co. v. Pennsylvania Mfrs. Ass'n Ins. Co., 134 N.J. 96, 102 (1993).  This Court concludes that the state of New Jersey has the most significant connections to the parties and the transactions at issue in the instant matter, and

accordingly applies New Jersey law.

  B.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2025 (1986). A party seeking summary judgment bears the initial responsibility of identifying the basis for its motion, along with evidence clearly demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catreet, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

  C.  PRINCIPLES GUIDING THE INTERPRETATION OF A LIABILITY POLICY UNDER NEW JERSEY STATE LAW

Under New Jersey law, the terms of an insurance contract are to be given "their everyday and common meaning." Newport Associates Development Co. v. Travelers Indem. Co. of Illinois, 162 F.3d 789, 792 (3d Cir. 1998). Any ambiguities in policy language "will be resolved in favor of the insured." Am. Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 41 (1998).

Whether an insurer bears a duty to defend its policyholder against a complaint depends upon whether the insurer would be obligated to indemnify the policyholder in the event that the third party plaintiff successfully proved his claim. Merrimack Mut. Fire Ins. Co. v. Coppola, 690 A.2d 1059, 1064 (N.J. Super. Ct. App. Div. 1997). An insurer's duty to defend its policyholder is broader than the duty to indemnify in that the insurer must defend its policyholder against

potentially covered claims even if the claims are groundless, false, or fraudulent. Hebela v. Healthcare Ins. Co., 851 A.2d 75, 79 (N.J. Super. Ct. App. Div. 2004).  The relevant inquiry for determining if the duty to defend has been triggered is a comparison of the allegations in the underlying complaint against the language of the insurance policy. SL Industries, Inc. v. American Motorists Ins. Co., 128 N.J. 188, 197 (1992).  When the two "correspond, the insurer must defend" its policyholder against the underlying suit. Id.

      D.      ANALYSIS OF POLICY ISSUED TO DEFENDANT

Applying these principles, this Court concludes that Evanston bears no duty to defend or indemnify Dr. Bulkley against the complaint filed by Mr. Chisolm. Coverage is barred by several applicable policy exclusions.

      1.      Alleged Statutory Violations in Underlying Complaint

Coverage for the claims alleging that Dr. Bulkley violated the Americans with Disabilities Act, the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the New Jersey Law Against Discrimination is barred by policy exclusions applying to acts "committed in violation of any law or ordinance"; for "any claim based upon or arising out of any... deliberate, or intentional acts,"; and for "claim(s) based upon or arising out of discrimination by the Insured on the basis of...physical handicap."

      a.      The acts "committed in violation of any law or ordinance" exclusion

The exclusion for acts "committed in violation of any law or ordinance" relieves Evanston of any defense obligation for those of Mr. Chisolm's claims alleging statutory violations.   The underlying complaint abounds in allegations that Dr. Bulkley's conduct-- in

refusing to provide an interpreter and in terminating the doctor-patient relationship with Mr. Chisolm-- constituted a violation of state and federal law.  Such allegations appear prominently throughout the complaint.  Counts one, two, and three allege that the defendants, including Dr. Bulkley, violated the Americans with Disabilities Act, the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the New Jersey Law Against Discrimination.  The section of the complaint entitled "Nature of the Case" begins with the statement that "on July 26, 1990, Congress enacted the Americans with Disabilities Act , establishing the most important civil rights for persons with disabilities in our country's history."  It concludes by characterizing the complaint as one which "claims that defendants violated the New Jersey Law Against Discrimination, the ADA, and Section 504 of the Rehabilitation Act..."

Moreover, the "Factual Allegations" section of Mr. Chisolm's complaint asserts that "defendants' willful, knowing and repeated acts of intentional discrimination against plaintiff evidences a pattern and practice of discrimination that is in violation of N.J.S.A. 10:5-1, et seq., the ADA and the Rehabilitation Act and caused plaintiffs (sic) to suffer and continue to suffer mental and physical pain and anguish." Defendant's Ex. C at 6.  In sum, the complaint squarely rests on allegations that Dr. Bulkley committed acts "in violation of a law or ordinance," and Evanston has not contracted to supply defense to Dr. Bulkley against such allegations.

          b.      The "deliberate or intentional act" exclusion

The exclusion for "any claim based upon or arising out of any... deliberate, or intentional acts" additionally precludes coverage for those of Mr. Chisolm's claims alleging statutory violations.  Failing to supply an interpreter for a patient at that patient's request and terminating the doctor-patient relationship are both intentional acts.  Dr. Bulkley argues that Mr. Chisolm's

8

action is grounded on a claim that Dr. Bulkley "failed to treat" Mr. Chisolm, thereby sounding in negligence.  However, Mr. Chisolm's complaint clearly alleges that Dr. Bulkley deliberately and consciously *refused* to treat Mr. Chisolm– an intentional act.  While this Court is not bound by Mr. Chisolm's legal characterizations of his own assertions, his own complaint does state that "each and all of the above acts (named in the complaint), both of omission and commision, were *intentional acts* of discrimination and each and all were a proximate cause of the damages suffered by plaintiff." (emphasis added). Defendant's Ex. C at 6.

          c.    The exclusion for claims arising out of discrimination on the basis of a physical handicap

The exclusion for "claim(s) based upon or arising out of discrimination by the Insured on the basis of... physical handicap" also precludes coverage for those of Mr. Chisolm's claims alleging statutory violations.   Mr. Chisolm alleges in his complaint that he is "considered to be an individual with a physical disability" under 29 U.S.C.§ 794. See Defendant's Ex. C at 5.  The Supreme Court of New Jersey has stated that individuals with hearing impairment suffer from a "physical handicap." State v. Johnson, 118 N.J. 10, 18 (1990) (referring to a Department of Corrections report that had stated that the Department has custody of "a number of inmates who suffer from a physical handicap," and stating in the following sentence, "Those inmates include twenty-four who are hearing-impaired..."). Construing the term "physical handicap" according to its plain and ordinary meaning, this Court finds that the plaintiff in the underlying suit, Mr. Chisolm, suffers from a physical handicap, under the facts alleged in his complaint.

This determination necessitates the application of the exclusion for "claim(s) based upon or arising out of discrimination by the Insured on the basis of...physical handicap" because Mr.

9

Chisolm's complaint alleges that Dr. Bulkley discriminated against him as a handicapped person by refusing to provide an interpreter and terminating him as a patient. Mr. Chisolm states that he was terminated as a patient by Dr. Bulkley "specifically due to his disability." See Defendant's Ex. C at 4. As such, Mr. Chisolm's claim is one that is "based upon or arising out of discrimination by the Insured on the basis of...physical handicap."

        2.      <u>Alleged Intentional Infliction of Emotional Distress in the Underlying Complaint</u>

The acts underlying Mr. Chisolm's claims of statutory violations, as contained in counts one through three of his complaint-- namely, that Dr. Bulkley discriminated against Mr. Chisolm as a handicapped person by refusing to provide an interpreter, and by additionally terminating him as a patient-- also underlie his claim for intentional infliction of emotional distress. See Defendant's Ex. C at 6 (stating that "Each and all of the above acts, both of omission and commission, were intentional acts of discrimination and each and all were a proximate cause of the damages suffered by plaintiff," and that "Defendants' willful, knowing and repeated acts of intentional discrimination against plaintiff evidences a pattern and practice of discrimination that is in violation of N.J.S.A. 10:5-1, et seq., the ADA and the Rehabilitation Act *and caused plaintiffs (sic) to suffer and continue to suffer mental and physical pain and anguish*.") (emphasis added). Further evidencing the extent to which Mr. Chisolm's claims of statutory violations are inextricably bound up with his claim of intentional infliction of emotional distress, his counts alleging statutory violations of the ADA and of the Rehabilitation Act each assert that the statutory violations caused Mr. Chisolm "severe" emotional distress. See Defendant's Ex. C at 7-8. Therefore, the three policy exclusions that apply to bar coverage for Mr. Chisolm's claims of

statutory violations equally apply to bar coverage for Mr. Chisolm's claim of intentional infliction of emotional distress.[2]

---

[2] Mr. Chisolm's complaint states as a "factual allegation" that he was "ignored, humiliated and treated like a non person by defendants." Defendant's Ex. C at 5. This sentence cannot be wrenched out of context from the complaint as a whole so as to obligate Evanston to tender a defense on behalf of Dr. Bulkley. As the New Jersey Supreme Court has held, the term "arising out of" in an insurance policy exclusion is to be construed broadly:

> The critical phrase 'arising out of,' which frequently appears in insurance policies, has been interpreted expansively by New Jersey courts in insurance coverage litigation. 'The phrase 'arising out of' has been defined broadly in other insurance coverage decisions to mean conduct 'originating from,' 'growing out of' or having a 'substantial nexus' with the activity for which coverage is provided.'

American Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 35 (1998) (quoting Records v. Aetna Life & Cas. Ins., 683 A.2d 834, 837 (N.J. Super. Ct. App. Div. 1996)). This Court finds that Mr. Chisolm's reference to being "ignored, humiliated and treated like a non person" has a substantial nexus with the more specific allegations in his complaint, namely, that Dr. Bulkley failed to provide Mr. Chisolm an interpreter and terminated Mr. Chisolm as a patient. The policy exclusions barring coverage for "any claim based upon or arising out of any... deliberate, or intentional acts," and for "claim(s) based upon or arising out of discrimination by the Insured on the basis of...physical handicap" therefore apply.

Mr. Chisolm's complaint also states as a "factual allegation" that after Dr. Bulkley "terminated" the doctor-patient relationship, he (Chisolm) was "then left unmonitored by the Defendants while he waited to obtain a new doctor to continue with his medical treatment." Defendant's Ex. C at 4. This Court interprets this statement to allege that Dr. Bulkley failed to track Mr. Chisolm's progress in obtaining an alternative treating physician after leaving Dr. Bulkley's care. As such, this statement may involve an assertion of negligence. However, this Court is not required to resolve this question of whether this particular allegation sounds in negligence or in intentional conduct for three reasons. First, this factual allegation involves conduct that Dr. Bulkley allegedly took place *after* the doctor-patient relationship between Dr. Bulkley and Mr. Chisolm ceased, thereby taking the allegation of 'failure to monitor' outside the ambit of the policy, which covers only claims resulting from conduct occurring during the period in which a third party claimant is a patient of the policyholder; the policy does not supply coverage for injuries sustained by former patients resulting from conduct undertaken by the policyholder during a period outside the term of the doctor-patient relationship. See Defendant's Ex. A at 6 (policy language stating that the policy covers injuries "sustained by a *patient* and committed by the individual insured, or by any person for whose acts or omissions the Insured is

### III. CONCLUSION

Because a reasonable jury could not find, based on the record before this Court, that Dr. Bulkley is entitled to defense or indemnification under his professional liability policy with Evanston, Dr. Bulkley's motion for summary judgment will be denied, and Evanston's motion for summary judgment will be granted.

Dated:  9-23-05                              s/ Robert B. Kugler
                                             ROBERT B. KUGLER
                                             United States District Judge

---

legally responsible...") (emphasis added).  The Court also notes that insurance policy coverage is available for injuries alleged by former patients. See, e.g., Dodge v. Legion Ins. Co., 102 F.Supp.2d 144, 148 (S.D.N.Y. 2000).  Second, those policy exclusions barring coverage for "any claim based upon or *arising out of* any... deliberate, or intentional acts," and for "claim(s) based upon or *arising out of* discrimination by the Insured on the basis of...physical handicap" apply to Mr. Chisolm's 'failure to monitor' allegation as well.  Third, were this Court to construe the 'failure to monitor' allegation as one sounding in negligence, such allegation would not be probative of conduct giving rise to an intentional-infliction-of-emotional distress cause of action (which requires a showing of intentional or reckless conduct), and thus the Court would construe the allegation as having been lodged in support of Mr. Chisolm's assertions of statutory violations, all of which are barred by the "acts committed in violation of any law or ordinance" policy exclusion.